mandate of the supreme court of the United States as to proofs; and it is so ordered.

WILSON, J., concurred.

---

### CRABTREE *v.* SEGRIST and others.

Filed March 14, 1885.

1. APPEAL—QUESTION NOT RAISED BELOW.
   A question not raised in the trial below cannot be considered on appeal by the higher court. Prince's Laws, § 5, pp. 68, 69.
2. CONDITIONAL SALE—NOTES FOR PAYMENT—SEIZURE OF GOODS TO SATISFY NOTES.
   A party, having sold cattle to another and taken the purchaser's notes for them, upon the condition that the title is to remain in him until the notes are paid, cannot, while holding the notes, seize or sell the cattle in order to make the debt good.
3. SAME—EVIDENCE, ABSOLUTE OR CONDITIONAL—QUESTION FOR JURY.
   Whether a transaction in which the seller delivered a bill of sale of the goods to the purchaser and accepted the latter's notes for payment was a conditional or an absolute sale, is a question that the jury may properly decide from the evidence.
4. SAME—GIVING AND ACCEPTANCE OF A NOTE—EVIDENCE.
   The giving and acceptance of a note is *prima facie* evidence of a settlement between the parties of the difference between them growing out of the transactions with which it is connected.

Appeal from the district court for the county of San Miguel.
*Lee & Fort*, for appellee.
*Catron, Thornton & Clancy*, for appellants.

BELL, J. This is an action in trover, brought to recover the value of certain cattle claimed to belong to appellee, the plaintiff in the court below, and unlawfully taken from him and converted by defendants to their own use. The facts of the case are briefly as follows: In 1880 the plaintiff bought of one Babb the remnant, as it is termed in the record, of the latter's herd of cattle, then to be found on certain ranges in Texas. The plaintiff came after said cattle and secured them. At the time of making this arrangement, plaintiff gave Babb notes for the amount agreed upon as the purchase money, and received from Babb a bill of sale for the cattle. Thereafter plaintiff secured and took possession of the cattle; but how many head there were, does not appear from the evidence in the record before us.

The only serious contention in the evidence is as to whether this transaction was an absolute or merely a conditional sale; the plaintiff insisting, and giving evidence tending to show, that the sale was absolute, accompanied by a bill of sale absolute on its face, and by delivery of the possession of the cattle as fast as they could be found and secured by him, and that his notes were given in full satisfaction. These notes consist of two promissory notes, each for the sum of $800, one payable in September, 1881, and the other in September, 1882. The defendants, however, insist, and introduce evidence tending to show, that the sale was conditional upon the payment of the notes at maturity; it being agreed between the plaintiff and Babb that the

title to the cattle should remain in the latter until the notes were paid, and that if not paid when due, he might assert his title and resume possession of the cattle. After the cattle were secured by the plaintiff, he drove them from the range in Texas, upon which they had been found by him, into Lincoln county, New Mexico.

The notes were not paid at maturity; and thereafter, in January or February, 1882, Babb undertook to sell the cattle to the defendants. He sent his son, armed with a power of attorney, to take possession of the cattle. This son, accompanied by the defendants, or some of them, went to the range in New Mexico, where the cattle were being herded in connection with other cattle belonging to the plaintiff, in charge of an employe of the plaintiff, and took possession of them, and sold them to the defendants. It does not appear that this employe of the plaintiff had any authority to give up the possession of the cattle. No exceptions whatever to the evidence are contained in the record; and, while interesting questions might have been presented as to the propriety of admitting parol testimony tending to contradict the terms of the bill of sale, and to change it from a bill of sale absolute to a conditional one, or from a bill of sale from Babb to Crabtree into a chattel mortgage from Crabtree to Babb; and as to the identity of the cattle taken by defendants with the cattle transferred by Babb to plaintiff; and as to Babb's right to take the enforcement of the condition of the sale, even if proved, into his own hands, and to take the cattle from the plaintiff's possession without any legal proceeding; and as to the right of Babb or his agent to take possession of the cattle, sell them, and appropriate the entire proceeds to his own use, when at most all that could be claimed, upon the defendant's theory of the case, would be that he had such a lien upon the property as would authorize him to take and sell it for the purpose of recovering such payment for the cattle as was reserved by the bill of sale,—we are now confined by the record to certain exceptions to the charge as given, and refusals to charge as requested.

The only other points to which our attention has been called by the appellants, are assignments of error, to the effect that there is no evidence to sustain the verdict against any defendant other than Segrist, and that there is no evidence of a demand before suit. It does not appear that either of those points was raised or insisted upon at the trial, and we are therefore of opinion that they cannot now be presented and urged before us. The general rule that only such assignments of error can be presented to the appellate court as were brought to the attention of the trial judge, so as to permit of their correction by him, is strengthened in this territory by the statutory provision that "no exception shall be taken in an appeal to any proceeding in the district court, except such as shall have been expressly decided in that court." Prince's Laws, § 5, pp. 68, 69. The record discloses an exception to the giving of plaintiff's second request to charge, but this exception appears to be now abandoned by its omission from the

assignments of error. Aside from this, we think the request was properly given.

The following instructions and refusals to charge are, however, properly before us, being presented both by the record and the assignment of errors:

"If you find from the evidence that the plaintiff or his brother purchased the cattle from W. M. or W. T. Babb, and that he or they gave their promissory notes therefor, and the same were accepted by the Babbs,—although the notes were deemed only as conditional payment, yet that would be *prima facie* evidence of payment,—and the said Babbs, while holding said notes, could not proceed to take possession of the said cattle and horses as their own, their remedy would be upon the notes, or to cancel the trade; and if you find from the evidence that the said Babbs did, under the circumstances just mentioned, take possession of the said cattle without the authority of the plaintiff, and dispose of them to the defendants, you will find for the plaintiff in the value of the cattle and horses at the time of taking the same, with interest."

We think this instruction was proper. It cannot be contended that Babb had the right to both retain the notes and also take possession of the property. He could not affirm the sale by retaining the notes and the cause of action merged in them,—that is, the consideration for the cattle,—and at the same time seek to rescind and abrogate the contract of sale by asserting his title to, and taking possession of, the cattle. Error is assigned upon the giving of the plaintiff's fourth request to charge, which is as follows:

"If you believe from the evidence that the plaintiff purchased a portion of the cattle in dispute from W. M. Babb, and that he, the said W. M. Babb, executed and delivered a bill of sale for the same, and that the cattle were at the time scattered on the range, and it being inconvenient or impossible for a manual delivery, the bill of sale would be an actual delivery whenever found; and if, at the time of the delivery of the bill of sale, said Babb accepted said Crabtree's notes, payable in one and two years, the said notes would be a payment therefor, and the said vendors would have to look to their notes for payment."

This instruction proceeds upon the theory that the sale from Babb to plaintiff was an absolute one, a theory as to which the evidence is conflicting, but one which the jury would have been fully warranted in finding; and if the jury found that the sale was absolute and without any condition for the return of the cattle, Babb's only right against the plaintiff would be for the purchase money. The plaintiff's fifth request to the court to instruct the jury is also assigned for error. It is as follows:

"If the jury find from the evidence that W. T. Babb at the time sold the cattle, or any of them, to the plaintiff, in the ' Whit' brand, and that the sale was on credit with reservations, and that soon thereafter the plaintiff executed and delivered to the said W. T. Babb his note in payment therefor, which note was accepted by said W. T. Babb, the acceptance of this note by said W. T. Babb, on account of this prior indebtedness, is *prima facie* satisfaction of the said debt and the discharge of the said conditions and reservations."

We think that this instruction was proper. The giving and acceptance of a note is *prima facie* evidence of a settlement between the parties of the differences between them, growing out of the transactions with which it is connected. In Massachusetts it was formerly held that the taking of a note was to be regarded as an absolute payment and discharge of the debt. *Thacher* v. *Dinsmore*, 5 Mass. 299; *Whitcomb* v. *Williams*, 4 Pick. 228. This was doubtless for the reason that the maker might be called upon to pay, not only the vendor of the goods for which the note was given, but also a possible innocent holder of the note, who had taken it for a valuable consideration; but now in that state, and we think generally, the rule is that it is only to be treated as a presumption of payment which may be rebutted. *Butts* v. *Dean*, 2 Metc. 76. And while now, doubtless, unless otherwise àgreed upon between the parties, a note is to be regarded as presumption of payment, and the creditor may proceed upon the original cause of action upon failure by the debtor to pay the note, yet acceptance of a note is certainly to be regarded as a waiver of any lien upon the property. "The vendor waives his lien by taking from the buyer a bill of exchange, or other security, payable at a different date." Benj. Sales, § 1185. "The vendor's lien is abandoned when he makes a delivery of the goods to the buyer." Id. § 1186. In this case Babb could not both accept and retain the notes, and at the same time insist upon the performance of the conditions which they were given to obviate.

Error is assigned because the court refused to give to the jury the first instruction asked for by the defendants, which is as follows:

"If the jury believe from the evidence that the cattle in question were agreed to be sold to plaintiff by W. M. Babb, or by W. I. Babb, and that in accordance therewith plaintiff was to collect and hold them on the range, keep up the brands, and not sell or move them without permission of Babb, and that the title was to remain in the Babbs until they were paid for by the defendants; and that unless the notes that were given for them were paid, the cattle were to remain the property of Babb; and that the bill of sale was simply given to enable the defendants to gather the cattle; and if the jury further believe that the notes were not paid at maturity, and have not since been paid, but have been surrendered to plaintiff and accepted by him,—then there was no sale of the cattle such as would prevent Babb from retaking possession of the cattle, and selling them to Segrist or any one else, in which event the jury should find for the defendant."

This request was properly refused, as it was based upon a state of facts not supported by the evidence in the case.

There is nothing in the testimony showing such a surrender of the notes by Babb as would avail the defendants in this suit. The only evidence on the subject is that the notes were handed to the plaintiff by Babb in June, 1884, more than two years after the taking by defendants of the cattle in question, and two years after the suit was commenced.

Certain portions of the instructions, given by the court of its own

motion, were also excepted to; but we think that although certain isolated paragraphs, taken by themselves, may be open to criticism, they are fully cured by subsequent observations.   The whole tone and purport of the charge is certainly as favorable to the defendants as they could ask or expect.   In fact, it leaves fully to the jury the only disputed question in the case, namely, was the transaction between Babb and the plaintiff an absolute and irrevocable, or a conditional and revocable, sale and transfer of the cattle? and instructed them that if they found the sale to have been an absolute one, they should render a verdict for the plaintiff, and if they found the sale to have been a conditional one, their verdict should be for the defendant.   This was, in effect, the whole case, and we think it was very fairly left to the jury.

The defendants' position was most strongly and favorably presented in their second charge, which was given by the court, and is as follows:

"If the jury believe from the evidence that the title to the cattle remained in the Babbs until the notes were paid, and that said notes were not paid on the day of maturity, or at any time since then, Babb had the right to retake the cattle and sell them to others; and if he did so, and sold them to Segrist, the jury should find the defendants not guilty."

This certainly was the most favorable view which the jury could possibly be permitted to take of the transaction.   We do not think that the evidence would have justified them in taking such a view, but the court left it to them to do so, and certainly the defendants cannot complain.   Taken as a whole, we do not think the charge can be said to have misled the jury, or in any manner prejudiced the defendants, so as to justify a new trial.

The judgment should be affirmed; and it is so ordered.

WILSON, J., concurred.